merely inappropriate. As we noted in *Williams*, 182 F.3d at 563, this "element of physical invasion" exceeds conduct that is "merely crude, offensive, and humiliating." I cannot overlook the severity of this physical contact.

Furthermore, the district court labeled both of Phillips's comments to Burnett as "mere offensive utterance[s]." Phillips's statement, "Since you have lost your cherry, here's one to replace the one you lost," was more than merely offensive. Unlike most of the comments found to be of inadequate severity in *Black* and *Abeita*, this comment was made directly to Burnett. As well, the comment was an explicit reference to a private body part, her hymen. I cannot agree with the majority's dismissal of this comment as innocuous. Such a blatantly sexual comment addressed directly to Burnett by her supervisor in the presence of other employees exceeded the excusable realm of crude and adolescent behavior.

Although the number of incidents alleged by Burnett–she presents three incidents of inappropriate conduct–is less than those alleged in *Black*, *Abeita*, or *Williams*, this should not be determinative. When viewed under the totality of the circumstances approach, the severe nature of these incidents distinguishes the present case. At a minimum, these facts create a genuine of issue of material fact as to whether the work environment was objectively hostile. Therefore, I respectfully dissent.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0051P (6th Cir.)
File Name: 00a0051p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT



JENNY BURNETT,
  *Plaintiff-Appellant,*

  *v.*                                   No. 98-6477

TYCO CORPORATION and
GRINNELL CORPORATION,
  *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 96-01132—James D. Todd, District Judge.

Argued: October 27, 1999

Decided and Filed: February 11, 2000

Before: MARTIN, Chief Judge; SUHRHEINRICH and
SILER, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Justin S. Gilbert, THE GILBERT FIRM, Jackson, Tennessee, for Appellant. Michael G. McLaren, Memphis, Tennessee, for Appellees. **ON BRIEF:** Justin S. Gilbert, THE GILBERT FIRM, Jackson, Tennessee, for Appellant. Michael G. McLaren, Memphis, Tennessee,

Cheryl Rumage Estes, THOMASON, HENDRIX, HARVEY, JOHNSON & MITCHELL, Memphis, Tennessee, for Appellees.

SILER, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. MARTIN, C. J. (pp. 10-12), delivered a separate dissenting opinion.

----

## OPINION

----

SILER, Circuit Judge.    Plaintiff Jenny Burnett sued defendants Tyco Corporation and Grinnell Corporation ("Grinnell") under Title VII, 42 U.S.C. § 2000e et seq., alleging that certain sexual statements and other conduct were sufficiently severe or pervasive to constitute a hostile working environment.  The district court granted summary judgment to defendants.  We affirm the grant of summary judgment because the allegations do not create a genuine issue of material fact as to whether the conduct was sufficiently severe or pervasive to support a finding of a hostile working environment.

## I. BACKGROUND

Burnett was an employee of Grinnell[1] for over nineteen years, during which time she alleges that she was sexually harassed.  Burnett points to three specific instances in which Jim Phillips, personnel manager for Grinnell, engaged in offensive conduct.  Burnett also submits complaints from other female Grinnell employees indicating that they have been offended by Phillips's inappropriate behavior.

The first instance of alleged harassment occurred sometime in July 1994 at a meeting of Grinnell's packing department.

----

[1]Tyco International (US) Inc. is the parent company of Grinnell Corporation.  Grinnell, as used herein, refers to both defendants.

We noted that a Title VII violation may exist even when no single episode of sexual harassment would be sufficient to create a hostile environment. *See id*. at 564. We stressed that the totality of the circumstances approach is the "most basic tenet" of the hostile work environment cause of action. *Id*. at 564.  More specifically, we found that incidents with an "element of physical invasion" were "not merely crude, offensive, and humiliating." *Id*.

Under *Meritor Savings Bank*, 477 U.S. at 67, and *Harris*, 510 U.S. at 21, sexual harassment is actionable under Title VII if the alleged conduct is sufficiently severe or pervasive. It need not be both. Burnett does not base her claim on the pervasive nature of Phillips's conduct, by alleging that Phillips's conduct was ongoing or continual. Rather, she asks this Court to examine whether the aggregate severity of Phillips's conduct was sufficient to create a hostile work environment. The district court and the majority have failed to examine Burnett's evidence of a hostile work environment under the totality of the circumstances approach. Both have broken out the individual incidents and determined that none alone was adequately "severe" to create a hostile work environment. The majority creates a scorecard, finding one act to be severe and two to be innocuous. While I do not fully agree with their conclusions, I object more strongly to their method of computation. The majority concludes that these numbers are insufficient to create an issue of material fact as to whether the conduct was sufficiently severe to create a hostile work environment. In doing so, the majority fails to examine the aggregate effect of the incidents. *See Williams*, 187 F.3d at 564.

The district court found that Phillips's act of reaching inside Burnett's blouse and placing a cigarette pack under her bra strap was merely inappropriate. The majority properly acknowledges this error and concedes that this physical contact was a battery. The severity of Phillips's act is enhanced because this was unwelcome physical contact of a very personal form. Reaching inside someone else's clothing, especially someone's undergarments, cannot be considered

—————————

**DISSENT**

—————————

BOYCE F. MARTIN, JR., Chief Judge, dissenting. In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993), the Supreme Court acknowledged that determining whether a work environment is objectively hostile or abusive is not a "mathematically precise test." Because this imprecise test requires careful consideration of the aggregate effect of the offensive factual incidents endured by Jenny Burnett, rather than simply a tallying of the occurrences, I must respectfully dissent.

In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986), the Court defined hostile work environment sexual harassment: "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." In *Harris*, the Court provided a nonexclusive list of factors for identifying a hostile work environment: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

The majority fails to acknowledge the impact of our Court's recent decision in *Williams v. General Motors Corporation*, 187 F.3d 553 (6th Cir. 1999). In *Williams*, we reversed the district court's grant of summary judgment in favor of the defendant. The plaintiff alleged multiple acts creating a hostile work environment: foul language, sexual comments directed at plaintiff, at least one incident of physical contact, perceived inequities of treatment, and pranks or annoying conduct by co-workers. *See id.* at 559, 562. We held the district court erred in its dismissal of these incidents as "'infrequent, not severe, not threatening or humiliating, but merely offensive.'" *Id.* at 563. We found the district court failed to consider the totality of the circumstances and thereby "robbed the incidents of their cumulative effect." *Id.* at 561.

Burnett stated that Phillips entered the room and began telling a story about a woman he had recently seen. While telling this story, he allegedly placed a pack of cigarettes containing a lighter inside Burnett's tank top and brassiere strap. Burnett stated that she was stunned, shocked, and exposed. However, she also testified that Phillips pulled the strap up just enough to insert the cigarette pack and that the resulting exposure was no greater than it would have been had she merely leaned over while wearing the tank top.

The second alleged incident occurred some two weeks later at another departmental meeting. On this occasion, Burnett was coughing and Phillips allegedly gave her a cough drop while stating, "Since you have lost your cherry, here's one to replace the one you lost."

The third incident allegedly occurred on December 29, 1994. Burnett was wearing a Christmas sweater that read "Deck the Malls." As Phillips walked by Burnett, he allegedly stated to her "Dick the malls, dick the malls, I almost got aroused."

Finally, other allegations of harassing behavior by Phillips are presented in two affidavits of fellow Grinnell employees. In the first affidavit, a fellow female employee stated that based on her personal knowledge of how women were treated by men at Grinnell she felt like "Grinnell [was] more like a whorehouse than a plant." Additionally, a second affidavit included a form filled out by a female employee that was placed in Grinnell's suggestion box. The suggestion form alleges that "[p]ractically all of the women down here has had a filthy remark from this man - Jim Phillips - including myself." Under *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246 (6th Cir. 1998), "this evidence is irrelevant at this stage to plaintiff's hostile environment . . . [claim] because there is no evidence that plaintiff was aware of these actions at the time." *Id.* at 249 n.4. Thus, we will address only the three allegations of Phillips's behavior directed to, and with the knowledge of, Burnett.

Following the third instance of alleged harassment, Burnett filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Grinnell alleges that it investigated the charges contained in the EEOC complaint, but could not substantiate them. No relief was granted by the EEOC, leading Burnett to institute this action. Grinnell moved for summary judgment, which was granted on the basis that Burnett failed to show that there were material facts in dispute regarding whether the conduct complained of was sufficiently severe or pervasive to create a working environment that a reasonable person would find hostile or abusive.

## II.  DISCUSSION

### A.  Standard of Review

This court reviews de novo a district court's grant of summary judgment. *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate only when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Id.* (quoting *First National Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

### B.  Hostile Work Environment.

Title VII of the Civil Rights Act of 1964 prohibits discrimination by an employer "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex[.]" 42 U.S.C. § 2000e-2(a)(1). In *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986), the Supreme Court held "that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive

men and women routinely interact,' and therefore summary judgment was inappropriate." *Id.* at 564 (citation omitted).

The *Harris* standard requires that the conduct be sufficiently severe *or* pervasive to alter the conditions of the plaintiff's employment and thereby create a hostile or abusive working environment. In the instance case, Burnett's three allegations occurring at the beginning and end of a six-month period are clearly not as pervasive as the fifteen incidents which occurred in *Williams* over a year-long period, or the various remarks made over the course of seven years in *Abeita*. Indeed, though it was clearly offensive, Phillips's behavior cannot be said to be even as pervasive as the several remarks made regularly over a four-month period in *Black* which were insufficient to support the jury's verdict therein. Thus, the occurrence of the three allegations over the six-month period does not give rise to a genuine issue of material fact as to whether the conduct was sufficiently pervasive to create a hostile work environment.

However, the cigarette pack incident was more severe than any of the conduct alleged in *Black, Abeita*, or even *Williams* because there was physical contact. Given *Williams's* emphasis upon an 'element of physical invasion,' this incident is fairly severe and perhaps even constitutes a battery. However, under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment.

AFFIRMED.

This court reversed, holding that the "District Court's analysis omits the plaintiff's claim that Katz's sexual comments were 'commonplace,' 'ongoing,' and 'continuing.' This omission is critical because . . . [the statements] appear to be of approximately equal severity to those found in *Black*." *Id*. at 252. In the instant case, Burnett does not allege that Phillips's conduct was commonplace, ongoing, or continuing. Indeed, three alleged instances spread out at the beginning and at the end of a six-month period are not commonplace, ongoing, or continuing, and are therefore less pervasive than the discriminatory conduct in *Abeita*.

The severity of the incidents is most properly evaluated in light of the recent *Williams* decision. In *Williams*, there were fifteen separate allegations of sexual harassment over a period of one year that were alleged to have created a hostile working environment. The allegations included derogatory and profane remarks directed at the plaintiff, sexually explicit comments directed at plaintiff, offensive comments directed at women in general, denial of plaintiff's overtime, and the exclusion of plaintiff from certain workplace areas. *See Williams*, 187 F.2d at 559. The district court granted summary judgment to General Motors on the grounds that the alleged incidents, though offensive, were not severe or pervasive enough to constitute a hostile work environment. *See id*. at 560.

This court reversed, holding that the district court failed to evaluate the allegations by considering the totality of the circumstances and erred by concluding that alleged conduct must be explicitly sexual in order to have created a hostile work environment. *See id.* at 561-62. The latter portion of this holding is immaterial to this appeal because all the conduct at issue was sexual in nature. The most relevant circumstance noted in *Williams* was that three of the alleged incidents "were not merely crude, offensive, and humiliating, but also contained an element of physical invasion." *Id*. at 563. This court held that "Williams's allegations, taken as a whole, raise a question whether Williams was subjected to more than 'genuine but innocuous differences in the ways

work environment." *Id*. at 66. The Court further explained that "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id*. at 67 (citing *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971)). Finally, *Meritor* established that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id*. (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).

The hostile or abusive environment standard has been both affirmed and elaborated upon by the Court on several occasions. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 2283 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54, 118 S. Ct. 2257, 2265 (1998); *Oncale v. Sundowner Offshore Serv., Inc.*, --- U.S. ---, 118 S. Ct. 998, 1001 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Importantly, in *Harris*, the Court noted that the *Meritor* standard "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris*, 510 U.S. at 21. Thus, Title VII is not "a general civility code for the American workplace." *Oncale*, --- U.S. at ---, 118 S. Ct. at 1002. "'The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Id*. (quoting *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring)).

Several circumstances are to be considered in determining whether an environment is "hostile" or "abusive," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The use of the term "may" reiterates the Court's insistence that this is a non-exhaustive list of possible circumstances to consider. Thus, the issue "can be determined only by looking at all the circumstances." *Id.*; *see*

*also Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999) (stating that "it is well-established that the court must consider the totality of circumstances.").

## C. Analysis

Burnett's sole contention is that the district court erred in finding that no genuine issue of material fact exists as to whether there was an objectively hostile work environment at Grinnell. Grinnell responds that Burnett has not shown that Phillips's conduct was sufficiently severe or pervasive to create an objectively hostile work environment and that there has been no showing that a condition of Burnett's work environment has been affected. The three most recent hostile environment cases emanating from this Circuit show that there is no genuine issue of material fact in this matter.

In *Black v. Zaring Homes, Inc.*, 104 F.3d 822 (6th Cir.), *cert. denied*, 118 S. Ct. 172 (1997), this court reversed a jury verdict which found that Black was subjected to a hostile work environment while she was an employee of Zaring Homes. Black alleged that she was subjected to various discriminatory comments made at bi-weekly meetings from July to October in 1993. First, at a July meeting, as a manager reached for a pastry he stated, "Nothing I like more in the morning than sticky buns." *Id.* at 823. The manager allegedly looked at Black in a suggestive manner while making this comment. *See id.* At the next meeting in August, participants joked that a parcel of land located next to a Hooters Restaurant should be named "Hootersville," "Titsville," or "Twin Peaks." These jokes allegedly continued at several of the bi-weekly meetings. *See id.*

Also in August, while discussing her job performance and bonus structure with her immediate supervisor, Black was told that she "was paid great money for a woman." *Id.* at 824. At a September meeting, Black allegedly felt uncomfortable when jokes were made about her pronunciation of the name "Busam," which was apparently pronounced "bosom." *See id.* Finally, at two meetings in October, Black was asked by the president of the defendant corporation, "Say, weren't you

there [at a biker bar] Saturday night dancing on the tables," and was referred to as a "broad." *See id.*

Although these alleged incidents took place fairly consistently over a period of four months, this court held that defendant was entitled to judgment as a matter of law under the *Harris* test because under the totality of the circumstances the comments were merely offensive and were therefore insufficient to support the jury's verdict. *See id.* at 826. The court deemed important the fact that "most of the comments were not directed at plaintiff[.]" *Id.* Unlike the regularly occurring conduct in *Black*, Burnett here alleges that the acts giving rise to a hostile work environment occurred at the beginning and at the end of a six month period. Thus, the allegations in the instant appeal are less pervasive than those in *Black*. Additionally, the two comments alleged to have been made by Phillips were no more severe than the statements made in *Black*. The fact that the statements were directed at Burnett neither removes their innocuous nature under Title VII nor cures their infrequency.

Burnett principally relies upon *Abeita*, in which a panel of this court reversed a summary judgment granted to TransAmerica on a hostile environment claim. In *Abeita*, the plaintiff alleged discriminatory conduct in the form of several offensive comments made over a period of seven years. Only one of the statements was specifically directed at plaintiff Abeita. The statement was made by the president of TransAmerica who asked Abeita, "oh yellow dress and yellow shoes, yellow underwear too?" *Abeita*, 159 F.3d at 248. The other alleged incidents concerned the president's sexual interest in other women, including a model he hired for a photo session in order to meet her, and various other comments that "were not sexual in nature but arguably reflect degrading gender stereotyping." *Id.* The district court granted summary judgment to TransAmerica, holding that the several offensive comments over a period of seven years did not present any evidence stronger than that addressed in *Black*. *See id.* at 252.